**Landau v DGital Media, LLC**

2025 NY Slip Op 31476(U)

April 25, 2025

Supreme Court, New York County

Docket Number: Index No. 654067/2019

Judge: Joel M. Cohen

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK:  COMMERCIAL DIVISION PART 03M

------------------------------------------------------------------------------X

DAVID LANDAU, FLUSHING LLC,

                                    Plaintiffs,

                        - v -

DGITAL MEDIA LLC, CADENCE 13, INC. (FORMERLY
KNOWN AS DGITAL MEDIA, INC.),

                                    Defendants.

------------------------------------------------------------------------------X

| | |
|---|---|
| **INDEX NO.** | 654067/2019 |
| **MOTION DATE** | 06/26/2023 |
| **MOTION SEQ. NO.** | 004 |

**DECISION + ORDER ON MOTION**

HON. JOEL M. COHEN:

The following e-filed documents, listed by NYSCEF document number (Motion 004) 13, 94, 95, 96, 97, 98, 99, 100, 101, 102, 103, 104, 105, 106, 107, 108, 109, 110, 111, 112, 113, 114, 115, 116, 117, 118, 119, 120, 121, 122, 123, 124, 125, 126, 127, 128, 129, 130, 131, 132, 133, 134, 135, 136, 137, 138, 139, 140, 141, 142, 143, 144, 145, 146, 147, 148, 149, 150, 151, 152, 153, 154, 155, 156, 157, 158, 159, 160, 161, 162, 163, 164, 165, 166, 167, 168, 169, 170, 171, 172, 173, 174, 175, 176, 177, 178, 179, 180, 181, 182, 183, 184, 185, 186, 187, 188, 189, 190, 191, 192, 193, 194, 195, 196, 197, 198, 199, 200, 201, 202, 203, 204, 205, 206, 207, 208, 209, 213, 214

were read on this motion for                    SUMMARY JUDGMENT                    .

Defendants DGital Media, LLC ("DGital") and Cadence 13, Inc. ("Cadence")

(collectively "Defendants") move for summary judgment dismissing the single claim brought

against them (fraud), as well as for judgment on their first and third counterclaims asserting that

Plaintiffs breached the implied covenant of good faith and fair dealing by, among other things,

bringing this action. Defendants also seek an award of sanctions on the ground that Plaintiffs'

fraud claim is frivolous. In response, Plaintiffs David Landau ("Landau") and Flushing, LLC

("Flushing") (collectively, "Plaintiffs") cross-move for summary judgment dismissing all

counterclaims asserted against them.

For the reasons discussed below, Defendants' motion for summary judgment is **granted**

with respect to Plaintiffs' fraud claim, and is otherwise **denied**, and Plaintiffs' motion for

**654067/2019   LANDAU, DAVID vs. DGITAL MEDIA LLC**
**Motion No.  004**

**Page 1 of 17**

1 of 17

[* 1]

summary judgment on Defendants' counterclaims is **granted**. Defendants' request for an award of costs and reasonable attorneys' fees pursuant to 22 NYCRR 130-1.1 is **granted**.

## BACKGROUND

Landau is the co-founder of DGital, an audio engagement company created to distribute and monetize "spoken word products," including podcasts (NYSCEF 196 [Defendants' Response to Plaintiffs' Counterstatement of Material Facts] ¶ 65). In July 2016, following a dispute between Landau and DGital's soon-to-be CEO Spencer Brown regarding a bid request from Vox Media, DGital's Board of Managers delegated substantially all of its power to Brown, who subsequently told Landau he was "out" of the company and asked him to stop coming into the office (NYSCEF 1 [Complaint] ¶¶ 73-88; NYSCEF 152 [Plaintiffs' Response to Defendants' Statement of Material Facts] ¶ 3). Ultimately Landau's employment was terminated in October 2017 (NYSCEF 152 ¶ 46).

As tensions between Landau and other DGital executives were brewing, Scott Calka and Ronald Hartenbaum, a DGital investor, formed Crossover Media Group, LLC ("Crossover") in March 2017 (NYSCEF 152 ¶ 9). Landau alleges that Crossover was formed to conceal DGital's relationship with one of Vox Media's brands, SB Nation, from one of its major clients, the Ultimate Fighting Championship ("UFC"), who Plaintiffs believe would have disapproved of any engagement between DGital and SB Nation (NYSCEF 1 ¶¶ 4-5, 94, 98; NYSCEF 152 ¶ 47). After learning about Crossover, Landau emailed his brother-in-law in May 2017, writing "This is crazzzzy [sic]. Fraud with the UFC. Fraud with me. What am I missing that they think they could do this without informing me" (NYSCEF 101). The next month, Landau emailed his counsel and others regarding Crossover, stating "[i]t's one company with the exception of Ron being in a different floor…" (NYSCEF 152 ¶ 24).

**654067/2019 LANDAU, DAVID vs. DGITAL MEDIA LLC**
**Motion No. 004**

**Page 2 of 17**

2 of 17

[* 2]

In July 2017, Defendants negotiated and consummated a sale transaction with Entercom Communications, pursuant to which Defendants had established a virtual data room for diligence purposes (NYSCEF 196 ¶¶ 143, 144). Discussing the data room, Landau's brother-in-law emailed him saying "That's gonna be sterile beyond sterile!" to which Landau replied "Yes. We're not looking for info. We're looking for omissions. Hope he didn't sanitize that" (NYSCEF 110).

Upon reviewing the data room, Landau, believing that a document related to Crossover had been removed, had his counsel reach out to DGital's general counsel, Jacklyn Siegel, to inquire as to Crossover's "genesis, who owns it, and it's [sic] relationship…with DGital" (NYSCEF 172 ["Siegel Email"]). As discussed in greater detail below, DGital (via Siegel) disclaimed knowledge of Crossover's ownership and corporate structure (noting only that DGital member Ron Hartenbaum "also does business with Crossover"), and indicated that Crossover provides "sales representation services" for DGital and certain clients "where [DGital] is conflicted" for which Crossover is paid an annual fee of $200,000 (NYSCEF 172).

A few days before the Siegel Email, in an email chain with the subject line "Re: Team today July 21 marks the 1 year anniversary of 'you blew it your [sic] out.' Words that will be remembered in landau history and passed down for generations," Landau stated "Just got off the phone with [Landau's counsel] and we decided to drill baby drill down on [Crossover]. That's it from the turret. Peace out and love :)" (NYSCEF 152 ¶ 31). Indeed, hours before receiving the Siegel Email, Landau's counsel advised him to "[c]reate a record. Let damages and, just as important, proof mount" because "[t]his is a wolverine trap. You don't come after the wolverine

**654067/2019   LANDAU, DAVID vs. DGITAL MEDIA LLC**
**Motion No.  004**

**Page 3 of 17**

with a 2x4. You let it get stuck in your trap" (NYSCEF 102).[1]

The next day, Landau emailed his counsel regarding the Siegel Email: "[DGital] pays 200 k a year to Crossover but has no information to the structure of it or knowledge of ownership? They want us to suspend reality…also it's much more then [sic]…200 k, [i]t's all the support and systems…I've never heard of a rep agreement whereby [DGital] pays the rep a service fee? That's Scott Calka's salary. We know that the conflict is SB Nation" (NYSCEF 111).

After Landau was terminated, the parties agreed that the company would buy out Landau's interest using an independent appraisal process pursuant to the DGital operating agreement (NYSCEF 152 ¶¶ 49-50). Following the appraisal, the parties entered into a Redemption Agreement and Release ("RAR") in May of 2018, under which Landau released all claims regarding the appraisal except for fraud (NYSCEF 196 ¶¶ 150, 158, 160).

Shortly after execution of the RAR, Plaintiffs brought an action against Defendants and other in this Court (Index No. 655011/2018 ["First Action"]) based on the Crossover allegations (*see* NYSCEF 179 [First Action Complaint]). The Court (Ostrager, J.) dismissed the First Action (which included claims for conversion, unjust enrichment, breach of fiduciary duty, and constructive trust) on the grounds that it was barred by the RAR, without prejudice to repleading a claim of fraud or fraud in the inducement that was outside the scope of the RAR release (NYSCEF 180 [First Action Transcript] at 17:3-10).

In this action, Plaintiffs assert that Defendants committed fraud in the appraisal process by misrepresenting the relationship between Dgital and Crossover to suppress the value of

---

[1] Mr. Landau forwarded this and other email chains with counsel to various third parties, which presumably is why this correspondence was not withheld on the basis of attorney-client privilege.

**654067/2019   LANDAU, DAVID vs. DGITAL MEDIA LLC**
**Motion No.  004**

**Page 4 of 17**

4 of 17

Plaintiffs' interest (*id.* at ¶¶ 8-12). This claim is based on Plaintiffs' theory that DGital had "*de facto* ownership" of Crossover by virtue of Crossover's use of and reliance upon Defendants' business, assets, resources, and proprietary information (NYSCEF 189 [Plaintiffs' Memorandum in Opposition] at 4; NYSCEF 1 ¶ 7).

In response, Defendants assert counterclaims that Plaintiffs bringing this action and the First Action breached the implied covenant of good faith and fair dealing with respect to the RAR and the DGital operating agreement. Defendants argue that the same conduct also constitutes malicious prosecution. Defendants also bring a counterclaim for defamation based on certain statements made by Plaintiffs in this litigation and to third parties.

## DISCUSSION

A party seeking summary judgment must make a *prima facie* showing of entitlement to judgment as a matter of law based on evidentiary proof in admissible form (*id.*; *see also Zuckerman v City of New York,* 49 NY2d 557 [1980]). If the moving party meets its burden, the opposing party "must produce evidentiary proof in admissible form sufficient to require a trial of material questions of fact on which he rests his claim or must demonstrate acceptable excuse for his failure to meet the requirement of tender in admissible form; mere conclusions, expressions of hope or unsubstantiated or assertions are insufficient" (*Zuckerman,* 49 NY2d at 562).

### I.      Summary Judgment is granted dismissing Plaintiffs' fraud claim

To succeed on their fraud claim, Plaintiffs must demonstrate that Defendants made a material misrepresentation of fact, with knowledge of its falsity and with intent to induce reliance, and that Plaintiffs justifiably relied on such misrepresentation and were damaged as a result (*see Eurycleia Partners, LP v Seward & Kissel, LLP*, 12 NY3d 553, 559 [2009] [citation omitted]; *Lama Holding Co. v Smith Barney*, 88 NY2d 413, 421 [1996]). "When the party to

**654067/2019   LANDAU, DAVID vs. DGITAL MEDIA LLC**
**Motion No.  004**

**Page 5 of 17**

5 of 17

whom a misrepresentation is made has hints of its falsity, a heightened degree of diligence is required of it. It cannot reasonably rely on such representations without making additional inquiry to determine their accuracy." (*Global Minerals & Metals Corp. v Holme*, 35 AD3d 93, 100 [1st Dept 2006] [citations omitted]; *see also M Entertainment, Inc. v Leydier*, 71 AD3d 517, 519 [1st Dept 2010]).

Plaintiffs principally rely on the Siegel Email—sent nearly a year before the execution of the RAR—as the basis of their fraud claim. The Siegel Email reads as follows:

> "1. Crossover provides sales representation services for DGital Media LLC ("DG") and certain DG clients where DG is conflicted.
>
> 2. DG pays Crossover an annual fee of $200k for those services.
>
> 3. It is our understanding that DG LLC member Ron Hartenbaum also does business with Crossover in connection with Crossover's provision of sales services to certain radio programs owned by Hartenbaum.
>
> 4. DG has no ownership interest in Crossover, and is not in possession of information regarding Crossover's ownership or corporate structure."

(NYSCEF 172). When Landau's counsel replied with follow up questions, Ms. Siegel did not respond (NYSCEF 196 ¶ 149). Plaintiffs also base the fraud claim on Defendants' listing of Crossover as a customer/advertising agent (rather than as a part of DGital) in their submission to the appraiser in connection with the exercise of the call (NYSCEF 196 ¶ 35; NYSCEF 27).

Plaintiffs' claim fails because they cannot demonstrate justifiable reliance on any of these statements. Landau admitted at his deposition that he was "very doubtful" of the Siegel Email, agreeing that it "absolutely" was a "suspension of reality" (NYSCEF 99 [Landau Dep. Transcript] at 184:23-185:11). The contemporaneous evidence bears that out quite colorfully. As noted above, on the same day of the Siegel Email, Landau's counsel emailed Landau,

**654067/2019   LANDAU, DAVID vs. DGITAL MEDIA LLC**
**Motion No.  004**

**Page 6 of 17**

[* 6]

advising him to "[c]reate a record. Let damages and, just as important, proof mount" because "[t]his is a wolverine trap. You don't come after the wolverine with a 2x4. You let it get stuck in your trap" (NYSCEF 102). Landau agreed, writing to his counsel the next day: "[DGital] pays 200 k a year to Crossover but has no information to the structure of it or knowledge of ownership? They want us to suspend reality…also it's much more then [sic]…200 k, [i]t's all the support and systems…I've never heard of a rep agreement whereby [DGital] pays the rep a service fee? That's Scott Calka's salary. We know that the conflict is SB Nation" (NYSCEF 111). More than a month before the Siegel Email, Landau again emailed counsel that Brown was "a crook…Ron can keep my shares in [Crossover]. It's one company with the exception of Ron being in a different floor…" (NYSCEF 152 ¶ 24).

In other words, Plaintiffs knew the facts underlying their legally dubious "*de facto* ownership" theory when the alleged misrepresentations were made—long before the buyout was effectuated—and elected not to raise these concerns to Defendants or the appraiser (NYSCEF 152 ¶¶ 52-53). Instead, the contemporaneous communications indicate a purposeful strategy of gathering evidence for a future litigation. Indeed, days before the Siegel Email, Mirian Landau, Plaintiff Landau's wife and the manager of Plaintiff Flushing LLC, emailed her daughter-in-law saying "[Landau's counsel] reasserted that we have a high value case…You may have also seen…that [Brown] deleted from the data room some information involving Crossover…[Landau's counsel] advised against suing [DGital], because if a law suit derails the closing of the Entercom deal, then [DGital] can sue [Plaintiff Landau]" (*id.* ¶ 32). After her daughter-in-law replied asking whether they can let the deal go through and then sue Crossover, Mirian responded "I think Crossover is the leverage we have to cut a deal with those assholes,

**654067/2019   LANDAU, DAVID vs. DGITAL MEDIA LLC**
**Motion No.  004**

**Page 7 of 17**

[* 7]

the opportunity to cash out is when DG is flush with cash" (*id.*). The same day that Landau discussed the Siegel Email with counsel, he emailed his brother-in-law, "REVENGE. Your thoughts for the counter offensive [?]," to which he responded "I like that he's getting answers in drips and that each is burying them a bit further and it'll really tell the story of deception in the end…Can't wait for it though!! :)" (NYSCEF 138). While Plaintiffs seek to downplay these and similar communications as "speculative banter" (NYSCEF 189 at 16), they cannot defeat summary judgment by contradicting their own unfavorable testimony to create an issue of fact (*see Rodriguez v New York City Hous. Auth.*, 304 AD2d 468, 469 [1st Dept 2003]; *Phillips v Bronx Lebanon Hosp.*, 268 AD2d 318, 320 [1st Dept 2000]).

Moreover, Plaintiffs provide no evidentiary basis for concluding that the appraised value would have changed had the appraiser been aware of the facts underlying Plaintiffs' "*de facto* ownership" theory. There is no allegation or evidence suggesting that DGital had any *financial* interest in Crossover that would have increased the appraised value of DGital (and thus ultimately Landau's compensation). Accordingly, summary judgment is granted to Defendants on Plaintiffs' fraud claim.

## II.     Summary Judgment is granted dismissing Defendants' first counterclaim

All parties seek summary judgment on Defendants' first counterclaim for breach of the implied covenant of good faith and fair dealing with respect to the RAR (NYSCEF 13). In a nutshell, this counterclaim asserts that Plaintiffs' attempts to pursue litigation to challenge the appraisal process in this action and the First Action breached an implied covenant in the RAR that forbade Plaintiffs from suing DGital in connection with the appraisal.

The RAR provides that Plaintiffs

**654067/2019   LANDAU, DAVID vs. DGITAL MEDIA LLC**
**Motion No.  004**

**Page 8 of 17**

"hereby irrevocably and unconditionally release[] and discharge[] the Company…of and from any and all charges, complaints, claims, demands, actions, obligations, contracts, torts, agreements, causes of action, suits at law or equity, rights, costs, losses, debts, expenses, sums of money, accounts, attorneys' fees, controversies, promises or liabilities of any kind or nature whatsoever, relating to the Appraisal or the determination of the Redemption Payment…provided, however, that notwithstanding the foregoing, nothing in this Section 5.1 shall release the Company Group from any Claims relating to or arising out of this Agreement or fraudulent conduct by any member of the Company Group" (NYSCEF 13 § 5.1).

While Justice Ostrager dismissed the First Action without prejudice to repleading a claim of fraud or fraud in the inducement, the Court did not indicate that any such claim would have merit, only that it would not be barred by the terms of the RAR. Although the RAR does not include a covenant not to sue, Defendants argue that the filing of the First Action, and this action thereafter, breached the implied covenant with respect to the release provision in the RAR.

A covenant of good faith and fair dealing in the course of performance is implied in all contracts (*Dalton v Educ. Testing Serv.*, 87 NY2d 384, 389 [1995]). This covenant includes "any promises which a reasonable person in the position of the promisee would be justified in understanding were included" (*Rowe v Great Atl. & Pac. Tea Co.*, 46 NY2d 62, 69 [1978] [citation omitted]; *see also Dalton*, 87 NY2d at 389 ["This embraces a pledge that 'neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract'"], quoting *Kirke La Shelle Co. v Armstrong Co.*, 263 NY 79, 87 [1933]). However, no obligation can be implied under the covenant of good faith and fair dealing where the obligation "would be inconsistent with other terms of the contractual relationship" (*Murphy v American Home Prods. Corp.*, 58 NY2d 293, 304 [1983]).

**654067/2019   LANDAU, DAVID vs. DGITAL MEDIA LLC**
**Motion No.  004**

**Page 9 of 17**

9 of 17

[* 9]

Defendants' attempt to invoke the implied covenant in these circumstances is unavailing. The RAR contains a release, not a covenant not to sue. With respect to the First Action, Defendants were free to seek sanctions from Justice Ostrager to the extent they contended that the first action was frivolous. With respect to the instant action, the RAR expressly carves out fraud claims from the scope of its release. Any compensation to Defendants for Plaintiffs filing a *meritless* fraud claim must be based on 22 NYCRR 130-1.1, which is discussed *infra*.

Accordingly, Plaintiffs' motion for summary judgment dismissing Defendants' first counterclaim is granted, and Defendants' motion is denied.

### III.     Summary Judgment is granted dismissing Defendants' second counterclaim[2]

Defendants' second counterclaim for breach of the confidentiality provision in the RAR[3] is based on Plaintiffs describing confidential client meetings and internal discussions in their complaints in both actions (NSYCEF 34 [Answer with Counterclaims] ¶¶ 111-122). Plaintiffs argue that summary judgment should be granted in their favor because Defendants waived any breach and failed to mitigate alleged damages because Defendants never sought to seal any documents filed in this or the First Action, relying on *In re Lehman Brothers Holding, Inc.* (541

---

[2] Defendants argue that Plaintiffs' cross motion should be denied without reaching the merits as to the second, fourth, and fifth counterclaims (for which Defendants do not seek summary judgment) because the cross motion was untimely (*see Brill v City of New York*, 2 NY3d 648, 654 [2004]). Although Plaintiffs' cross motion was untimely under the Court's scheduling order (NYSCEF 90), the Court exercises its discretion to consider it notwithstanding *Brill* because the motion was still brought within the statutory period of 120 days following Note of Issue (*see e.g. Arrpei, LLC v Pub. C.I.R. Mut. Ins. Co.*, 2023 WL 2989649 [Sup Ct, NY County 2023], *mod on other grounds ARCPE1, LLC v Pub. Serv. Mut. Ins. Co.*, 231 AD3d 661, 662 [1st Dept 2024]).

[3] The RAR provides that "Seller shall treat and maintain in confidence all secret or confidential information, knowledge or data…which shall not be or become public knowledge (other than by acts by the Seller…in violation of this Agreement" (NYSCEF 13 § 6.2).

**654067/2019   LANDAU, DAVID vs. DGITAL MEDIA LLC**
**Motion No.  004**

**Page 10 of 17**

10 of 17

BR 551, 572 [SD NY 2015] ["where a party to an agreement has actual knowledge of another party's breach and continues to perform under and accept the benefits of the contract, such continuing performance constitutes a waiver of the breach"]). Defendants reaped the benefits of the RAR when the First Action was dismissed, without seeking redress for any breach thereof, and accordingly waived this claim.

Plaintiffs' mitigation argument is also persuasive (*see Brushton-Moira Cent. School Dist. v Fred H. Thomas Assoc., P.C.*, 91 NY2d 256, 263 [1998] ["the injured party has a duty to mitigate damages"]). Further, Defendants have not provided evidence of any damages they have suffered as a result. Summary judgment is granted dismissing the second counterclaim.

### IV. Summary Judgment is granted dismissing Defendants' third counterclaim

All parties seek summary judgment on the third counterclaim for breach of the implied covenant with respect to the DGital Operating Agreement, which provides that the "pursuit of other ventures and activities by each Member…even if competitive with the business of [DGital], is hereby consented to…and each Member…shall have the right to take for its own account…any such particular investment opportunity…" (NYSCEF 15 § 5.4). Though the Court is skeptical of Plaintiffs' *de facto* ownership theory, Plaintiffs' allegations sound in misappropriation of DGital's assets in favor of Crossover, not merely other DGital members engaging in competitive ventures. To the extent the DGital Operating Agreement contains an implied covenant not to sue for matters encompassed by Section 5.4, which itself is doubtful, the Court does not find that Plaintiffs' allegations here fall within the scope of that provision. Accordingly, summary judgment is granted to Plaintiffs dismissing the third counterclaim.

**654067/2019   LANDAU, DAVID vs. DGITAL MEDIA LLC**
**Motion No.  004**

**Page 11 of 17**

### V.  Summary Judgment is granted dismissing Defendants' fourth counterclaim

Defendants bring a fourth counterclaim for commercial defamation and defamation per se based on multiple statements made by Plaintiffs in connection with this and prior litigation between the parties. Commercial defamation requires a false and defamatory statement of fact, of or concerning an existing business, that is published to a third party, and which causes damage to the reputation of that business (*Jash Diamonds Inc. v Marquise*, 2016 NY Slip Op 31238[U], 20 [Sup Ct, NY County 2016]). False factual allegations that tend to injure a party in their trade, business or profession are considered defamatory per se (*Liberman v Gelstein*, 80 NY2d 429, 435 [1992]). Whether a statement is actionable as defamation is a matter of law (*Mann v Abel*, 10 NY3d 271, 276 [2008]).

The allegedly defamatory statements contained in the complaints in this action and the First Action are immune from liability if "such words and writings are material and pertinent to the questions involved" (*TRB Acquisitions LLC v Yedid*, 215 AD3d 40, 43-44 [1st Dept 2023], citing *Youmans v Smith*, 153 NY 214, 219 [1897]). Defendants argue that portions of the complaint are defamatory and irrelevant to the fraud claim (*see* NYSCEF 1 ¶¶ 62-76). While these portions of the complaint do not appear to be especially relevant (nor especially defamatory), they do relate to Defendants' dealings with Vox Media, which held SB Nation among its podcast properties (NYSCEF 1 ¶ 93). As the statements are not irrelevant, the Court agrees with Plaintiffs that the statements in the two complaints are immune (*see Flomenhaft v Finkelstein*, 127 AD3d 634, 637 [1st Dept. 2015] [noting that the standard for pertinence is "extremely liberal"]).

Defendants also take issue with Plaintiffs' circulation of copies of the complaints to industry participants via email, as well as a handwritten letter and two voicemails. Circulating

**654067/2019  LANDAU, DAVID vs. DGITAL MEDIA LLC**
**Motion No.  004**

**Page 12 of 17**

the complaints is protected by the litigation privilege, and the messages in the body of the emails are not defamatory (NYSCEF 198-206). Following dismissal of the First Action, Landau mailed a copy of the First Action Complaint to an industry participant along with a handwritten letter, stating "'Winter is coming' Pudgy Boy won't be laughing!...We know money was diverted by we need the details…I always knew he was capable of this" (NYSCEF 34 [Answer with Counterclaims] ¶ 76; NYSCEF 35 [Letter]). While the statement regarding diversion of money approaches a statement of fact, the Court concludes that the reasonable reader would have believed that this is likely an opinion when read in context with the copy of the complaint and the qualification that "we need the details," (*see Mann v Abel*, 10 NY3d 271, 276 [2008] [In determining whether a statement is actionable, "[c]ourts must consider the content of the communication as a whole, as well as its tone and apparent purpose…and determine whether the reasonable reader would have believed that the challenged statements were conveying facts"] [quotations omitted]). Landau's alleged voicemail statements, "look out for the UPS, it's an eye opener" and "No one's ever hit a walk off homerun against me my entire career, and [CEO] Spencer [Brown] won't either[,]" are likewise nonactionable, as they are not statements of fact (NYSCEF 34 ¶¶ 77- 78).  Further, statements made "in anticipation of good faith litigation" are privileged (*Gottwald v Sebert*, 40 NY3d 240, 253 [2023]). The audience and date of the communications are irrelevant: the privilege may be lost only where a defendant proves that the statements were not pertinent to a good faith anticipated litigation (*id.* at 254 n 3). Accordingly, summary judgment is granted to Plaintiffs on the counterclaim for defamation.

**654067/2019   LANDAU, DAVID vs. DGITAL MEDIA LLC**
**Motion No.  004**

**Page 13 of 17**

[* 13]

## VI.    Summary Judgment is granted dismissing Defendants' fifth counterclaim

Finally, in their fifth counterclaim, Defendants argue that bringing each action was an act of malicious prosecution. To prove a malicious prosecution claim, Defendants must show that Plaintiffs initiated an action with malice, without probable cause, which imposes special injury before terminating in failure (*Engel v CBS, Inc.*, 93 NY2d 195, 206 [1999]). Special injury is "some concrete harm that is considerably more cumbersome than the physical, psychological or financial demands of defending a lawsuit" (*id.* at 205). In a civil action, the lack of probable cause must be patent (*Facebook, Inc. v DLA Piper LLP (US)*, 134 AD3d 610, 614 [1st Dept 2015]). While the Court agrees that the First Action was brought in violation of the RAR, the lack of probable cause was not patent. With respect to the instant action, Plaintiffs should have known that no valid cause of action for fraud could be maintained on these facts. As Plaintiffs' fraud claim has now failed, the Court turns to the questions of malice and special injury.

Defendants claim that their special injury arises from Plaintiffs circulating copies of the complaint to Entercom executives before the close of Entercom's transaction with Defendants, resulting in Defendants needing to address the suit in negotiations and include special provisions related thereto in the transaction agreements, as well as potentially affecting consideration received (NSYCEF 195). However, addressing pending litigation against a party to a transaction does not "rise to the level of atypical consequences of…being sued" (*Engel*, 93 NY2d at 206). Accordingly, Defendants have failed to provide evidence of special damages, and summary judgment is granted to Plaintiffs dismissing this counterclaim.

**654067/2019   LANDAU, DAVID vs. DGITAL MEDIA LLC**
**Motion No.  004**

**Page 14 of 17**

## VII. Defendants' request for sanctions is granted

The standards for imposing sanctions are different than those for a claim of malicious prosecution (*Engel*, 93 NY2d at 207). The Court may award "costs in the form of reimbursement for actual expenses reasonably incurred and reasonable attorney's fees" in connection with frivolous conduct (22 NYCRR § 130-1.1 [a]). Conduct is frivolous if, among other things, "it is completely without merit in law and cannot be supported by a reasonable argument for an extension, modification or reversal of existing law" or "it asserts material factual statements that are false" (*id.* [c] [1] & [3]). "In determining whether the conduct undertaken was frivolous, the court shall consider…whether or not the conduct was continued when its lack of legal or factual basis was apparent, or should have been apparent" (*id.*).

Here, Defendants provide numerous examples of Plaintiffs' awareness of the facts underlying the fraud claim well before the buyout, as well as Plaintiffs' statements to the contrary in this litigation (NYSCEF 95 at 14-15). The contemporaneous record makes clear that Plaintiff made a tactical decision *not* to raise the question of Crossover's ownership or "fraud," and to instead create a litigation record for future use. And then, despite agreeing to a release of claims that waived all claims other than fraud, he nevertheless pursued a fraud claim despite unmistakable awareness that he was not misled by the purportedly fraudulent statements upon which this case rests. Thus, the claim was frivolous.

Moreover, in a verified interrogatory, Plaintiffs claimed that they first learned that a DGital partner and investor was also a cofounder/owner of Crossover during oral argument in the First Action (NYSCEF 117). This was a false statement. In his deposition, Landau admitted that he visited Crossover's website in 2017—prior to the buyout—and learned at that time that the same individual was a partner/founder of Crossover, and that Crossover was servicing SB Nation

**654067/2019   LANDAU, DAVID vs. DGITAL MEDIA LLC**
**Motion No.  004**

**Page 15 of 17**

15 of 17

(NYSCEF 99 at 116:2-12). Especially given the involvement of counsel in the communications discussed above, the lack of factual basis should have been apparent long ago.

Accordingly, Defendants' request for sanctions is granted, and Defendants shall recover their reasonable costs and attorneys' fees incurred in connection with defending the fraud claim in this action.

Therefore, it is

**ORDERED** that Defendants' motion for summary judgment is **granted** dismissing Plaintiffs' fraud claim with prejudice, and is otherwise **denied**; it is further

**ORDERED** that Plaintiffs' motion for summary judgment is **granted** dismissing all of Defendants' counterclaims with prejudice; it is further

**ORDERED** that, pursuant to an award of sanctions under 22 NYCRR 130-1.1, Defendants shall recover from Plaintiffs their costs and reasonable attorney's fees incurred in defending this action; it is further

**ORDERED** that within 14 days of this decision and order, Defendants shall submit a proposed judgment along with an application supporting the amount of the fees awarded above, which application shall differentiate between fees and costs incurred defending the fraud claim versus prosecuting their counterclaims; it is further

**ORDERED** that Plaintiffs may submit an opposition to the form of judgment and to the amount of fees and costs sought within 14 days of Defendants' application therefor; and it is further

**ORDERED** that Defendants upload a copy of the transcript of oral argument held on March 13, 2025 to NYSCEF upon receipt; and it is further

This constitutes the decision and order of the Court.

**654067/2019   LANDAU, DAVID vs. DGITAL MEDIA LLC**                               **Page 16 of 17**
**Motion No.  004**

20250425152841JMCOHEN3C5ACE2B118741B09BA2457B24F16732

_____4/25/2025_____
**DATE**

_____
**JOEL M. COHEN, J.S.C.**

| CHECK ONE: | **X** | **CASE DISPOSED** | | **NON-FINAL DISPOSITION** | | |
|---|---|---|---|---|---|---|
| | | **GRANTED** | **DENIED** | **X** **GRANTED IN PART** | | **OTHER** |
| APPLICATION: | | **SETTLE ORDER** | | **SUBMIT ORDER** | | |
| CHECK IF APPROPRIATE: | | **INCLUDES TRANSFER/REASSIGN** | | **FIDUCIARY APPOINTMENT** | | **REFERENCE** |

654067/2019   LANDAU, DAVID vs. DGITAL MEDIA LLC
Motion No.  004

Page 17 of 17

[* 17]